UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RYAN ADAM DIXON,

               Plaintiff,

    v.

MULTICARE HEALTH SYSTEM, a
Washington non-profit corporation, in its
capacity as a plan administrator;
MULTICARE HEALTH SYSTEM
401(k) PLAN; MUTLICARE HEALTH
SYSTEM 403(b) EMPLOYEE
SAVINGS PLAN,

               Defendants.

CASE NO. CV25-5414

ORDER

THIS MATTER is before the Court on defendants MultiCare Health System,

MultiCare Health System 401(k) Plan, and MultiCare Health System 403(b) Employee

Savings Plan's (collectively, "MultiCare") motion to dismiss, Dkt 15; pro se plaintiff

Ryan Dixon's motion to compel plan documents, Dkt. 19; Dixon's motion for an

extension of time, Dkt. 26; and MultiCare's motion for a status or scheduling conference,

Dkt. 33.

ORDER - 1

Dixon alleges that MultiCare's administrative errors at the time of his hiring prevented him from opting out of his automatic enrollment in MultiCare's 401(k) Plan. He asserts claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), Washington state law, RCW 49.52.070 for willful withholding of wages, and retaliation. He seeks reimbursement of all wages deferred to his 401(k) account while he was unable to modify his contribution setting, as well as double damages and attorney's fees.

MultiCare seeks dismissal, contending that Dixon failed to exhaust MultiCare's administrative review procedures, and that the 401(k) Plan requires Dixon to arbitrate his claims.[1] MultiCare also argues that his Washington state law wage withholding claim is preempted by ERISA, and that he fails to allege a specific retaliatory act.

## I.   BACKGROUND

In December 2023, Dixon was hired as a registered nurse at MultiCare Good Samaritan Hospital in Puyallup, Washington. Dkt. 17 at 4. At Dixon's onboarding, an incorrect Social Security Number was input into his electronic employment records.[2]

---

[1] MultiCare alternatively argues in a footnote that Dixon's ERISA § 502(a)(1)(B) "benefits due" claim should be dismissed because he cites a law, 26 C.F.R. § 1.414(w)-1(b)(2)(v), and a Plan provision, Plan § 5.12, that do not exist. Dkt. 15 at 7 n.7. Dixon responds that these were merely "typographical errors, and corrects the citations to 26 C.F.R. 1.414(w)-1(c)(2)(i) and Plan §§ 10.2 and 4.1(b). He blames the errors on MultiCare's withholding of Plan documents. While the Court is skeptical of Dixon's excuse, MultiCare did not respond to Dixon's explanation, and it makes no additional argument as to why Dixon's ERISA claim fails on its merits. MultiCare's motion to dismiss on this alternative ground is **DENIED**.

[2] Dixon claims MultiCare's administrative error violated multiple federal requirements: including verifying identity documents under 8 U.S.C. § 1324a(b)(1)(A); ensuring tax reporting accuracy under 26 U.S.C. § 6051; and maintaining accurate participant records under 29 U.S.C. § 1059. Dkt. 17 at 19. Dixon does not assert any claims under those laws.

ORDER - 2

Second Am. Compl. ("2AC"), Dkt. 13-1 at 1. MultiCare used the inaccurate SSN and Dixon's nickname, "Rome" Dixon, (rather than his legal name, Ryan Dixon) to open Dixon's 401(k) retirement account. *Id.*

Dixon was automatically enrolled in MultiCare's 401(k) Plan. Dkt. 15 at 2; *see* Dkt. 17-1 at 27. Under the Plan, 3% of an employee's pre-tax compensation is deducted from each paycheck and contributed to the employee's 401(k) account. Dkt. 17-1 at 27. The Plan also includes a discretionary employer match. *Id.* Employees receive notice of the automatic enrollment and may opt out during the Plan's 60-day opt-out period. *Id.* Changes to enrollment or contribution amounts can be adjusted at any time and apply prospectively. *Id.* Unlike some 401(k) plans, the MultiCare Plan does not allow for fund withdrawal within 90 days of the first automatic enrollment deduction. *Id.*

The Plan provides detailed procedures for resolving disputes. It requires that "any claim, dispute, or breach arising out of or in any way related to the plan" be resolved through arbitration in Tacoma, Washington. Dkt. 16 at 109. However, as a prerequisite to arbitration, employees must first exhaust all internal review procedures. The Plan requires employees to file claims with MultiCare's Retirement Committee. *Id.* at 12, 66. If the Committee denies the claim, an employee may appeal that decision. *Id.* at 66. Only after the Committee upholds its original decision may the claim be resolved through arbitration. *Id.*

On April 12, 2024, MultiCare automatically deferred $769.92 of Dixon's pre-tax wages into his 401(k) account. 2AC, Dkt. 13-1 at 3. One month later, Dixon notified MultiCare that he could not access the employee portal to stop his 401(k) contributions

ORDER - 3

because his account was set up with an incorrect name and SSN. *Id.* at 3.; *see* Dkt. 16 at 143–151. On June 2, 2024, Dixon provided MultiCare with his correct SSN. Dkt. 17-1 at 28. MultiCare updated his account, and Dixon was able to stop further contributions. *Id.* Between April 12, 2024, and June 7, 2024, MultiCare automatically deferred $1,317.25 to Dixon's 401(k) account. 2AC, Dkt. 13-1 at 3.

On April 28, 2025, Dixon requested a refund from MultiCare's Retirement Committee for what he later alleges were "involuntary retirement contributions during financial hardship." Dkt. 17 at 9. While that request was pending, Dixon sued.[3] Dkt. 1. He subsequently filed First and Second Amended Complaints. Dkts. 11, 13-1. He asserts ERISA claims for (1) recovery of "benefits due," and (2) breach of fiduciary duty; a Washington state law claim under RCW 49.52 for willful wage withholding; and ERISA and state law claims for retaliation. 2AC, Dkt. 13-1 at 4–5.

On May 30, 2025, the Retirement Committee denied Dixon's request for a refund of his 401(k) retirement contributions. *Id.* at 1. Dixon appealed, arguing that the denial was in error and requesting that MultiCare provide him with certain documents, including the complete claim file, workday audit log, call logs, plan documents, service agreements, and documents describing the policies and procedures for claim distribution. *Id.*; Dkt. 17-1 at 2. On July 2, 2025, MultiCare emailed Dixon the Plan documents, the Trust Agreement, and the Annual Report. Dkt. 17-1 at 20. MultiCare refused to provide

---

[3] Though he lives in Florida, this is the eighth case pro se plaintiff Dixon has filed in this District in the past four years.

the remaining requested documents, explaining that they were either not required under ERISA or did not exist. *Id.* at 21.

MultiCare's motion to dismiss argues that Dixon failed to exhaust[4] the Plan's internal review procedures and is required to arbitrate his ERISA claims. Dkt. 15 at 6, 7. It asks the Court to accept the parties' briefing on arbitration and decide the issue without requiring a separate motion to compel arbitration. *Id.* at 8 n.9. The parties agree that if arbitration is compelled, the ERISA claims must be stayed and not dismissed. Dkt. 17 at 17; Dkt. 18 at 8 n.9.

MultiCare further contends that Dixon's state law wage withholding claim is preempted by ERISA and should be dismissed. It also argues that Dixon's retaliation claims fail because he alleges only prospective relief "should an adverse action materialize" sometime in the future. Dkt. 15 at 10 (citing to 2AC, Dkt. 13-1 at 6).

Dixon responds that the Plan's arbitration clause is unenforceable because it eliminates substantive ERISA rights. Dkt. 17 at 10. Alternatively, he asserts that MultiCare waived any right to arbitrate by filing its motion to dismiss and producing documents. *Id.* at 17. He further contends that his state law wage withholding claim is not preempted because it is unrelated to the Plan. *Id.* at 13. He also argues that MultiCare retaliated against him by sending email blasts to multiple employees and delaying his job transfer request. *Id.* at 15.

---

[4] MultiCare conceded in its reply that Dixon exhausted his administrative remedies when the Retirement Committee denied his appeal on August 1, 2025. Dkt. 18 at 3. MultiCare's exhaustion argument is therefore moot.

ORDER - 5

On August 1, 2025, the Retirement Committee denied Dixon's appeal, stating that "the Plan does not provide for the refund of contributions made when a participant is automatically enrolled in the Plan." Dkt. 17-1 at 26.

On August 31, 2025, Dixon moved to compel production of all requested documents and the complete administrative record. Dkt. 19. In response, MultiCare argues that Dixon's motion is procedurally deficient, and that Dixon failed to confer in good faith. It asserts that it has produced everything ERISA requires. It also requested that the Court admonish Dixon and warn him that his repeated willful violation of the federal rules will warrant monetary sanctions in the future.

The issues are discussed in turn.

## II.  DISCUSSION

**A.  Rule 12(b)(6) Legal Standard**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Although courts must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir.

2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

When granting a Rule 12(b)(6) motion to dismiss, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, when the facts are not in dispute and the sole issue is whether there is liability as a matter of substantive law, courts may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**B.     The 401(k) Plan documents, Dixon's HR ticket, 26 C.F.R. § 1.414(w)-1, and Dixon's internal appeal documents are incorporated by reference into Dixon's complaint.**

As an initial matter, the Court must determine which materials it may consider when evaluating MultiCare's motion to dismiss. Generally, a court may not consider any material outside the pleadings in ruling on a Rule 12 motion, or the motion is converted to one for summary judgment (and the opposing party is entitled to respond to the new motion). *See* Fed. R. Civ. P. 12 (b)(6). There are two exceptions to this rule.

First, the Court may consider material submitted as part of the complaint, or upon which the complaint necessarily relies, if the material's authenticity is not contested. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). "Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents." *In re NVIDIA Corp. Sec. Litig*., 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (citation and quotation marks omitted). Second, under Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record. *Id.*

MultiCare asks the Court to incorporate by reference the following documents: Dixon's 401(k) Plan, his HR ticket and related email correspondence, and 26 C.F.R. § 1.414(w)-1. Dkt. 15 at 6; *see* Dkt. 16. Dixon does not oppose the request. Because these documents form the basis of Dixon's claims, MultiCare's request is **GRANTED**.

Although Dixon makes no formal incorporation request, he also submits multiple documents for the Court's consideration in opposing MultiCare's motion. *See* Dkt. 17-1. The Court incorporates by reference each document except MultiCare's email correspondence with Dixon concerning a separate investigation, exhibits E and F, because they were not referenced or relied on in his complaint.

ORDER - 8

**C.      Dixon's ERISA claims are subject to arbitration.**

MultiCare argues first that Dixon's claims are subject to the Plan's mandatory arbitration provision.[5] Dkt. 15 at 7. It contends that the provision is enforceable and that his claims fall within its scope.

Dixon does not dispute that the arbitration provision applies to his claims. However, he appears to argue that the Plan's arbitration provision is unenforceable because it eliminates the right of claimants to proceed as a class. Dkt. 17 at 10–11. He also argues that MultiCare waived its right to arbitrate by filing its motion to dismiss (which includes the arbitration argument). *Id.* at 7.

Under the Federal Arbitration Act, valid arbitration agreements are enforceable. It "permits a party 'aggrieved by the alleged . . . refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. § 4). A court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether  the agreement encompasses the dispute at issue." *Id.* (citation omitted). If the answer to both questions is "yes," then the agreement must be enforced. *Id*. The FAA "leaves no place for the exercise of discretion by a district court;" instead it mandates "that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been

---

[5] MultiCare originally raised the arbitration argument in its motion to dismiss before Dixon had fully exhausted his internal appeal efforts. Because the appeals process is now complete and the parties have fully briefed the issue, the Court treats MultiCare's request as a motion to compel arbitration.

signed." *Id*. (emphasis in original) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

However, courts may invalidate an arbitration agreement that prevents the "effective vindication" of a federal statutory right. *Am. Exp. Co. v. Italian Colors Rest*., 570 U.S. 228, 235 (2013). When this exception applies, a plan's arbitration provision is unenforceable. *Id.* The effective vindication exception is intended to prevent the "prospective waiver of a party's *right to pursue* statutory remedies." (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc*., 473 U.S. 614, 637 n.19 (1985)).

Dixon argues that the arbitration provision is unenforceable because it "eliminates plan-wide relief." 2AC, Dkt. 13-1 at 4 (citing *Smith v. Bd. of Directors of Triad Mfg*., Inc, 13 F.4th 613 (7th Cir. 2021)). He argues that discovery may "reveal systemic recordkeeping failures affecting other participants, preserving potential class or plan-wide claims under [ERISA]." Dkt. 17 at 11. This position has been squarely rejected. In *Italian Colors*, the Supreme Court held that a class action arbitration waiver "merely limits arbitration to the two contracting parties;" it does not eliminate their right to pursue statutory remedies. *Id.* at 236. The Court emphasizes that an individual suit is adequate to assure "effective vindication" of a federal right. *Id.*

Furthermore, a pro se litigant cannot litigate claims that are not personal to him. *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962*)*. Dixon may therefore represent only himself. He cannot represent a class of similarly situated people or as Dixon suggests, "preserve" his ability to later add class-wide claims. *See* Dkt. 17 at 11.

Dixon makes no other argument, and notably, the Plan's arbitration provision does not limit Dixon's right to pursue ERISA remedies, but rather preserves them:

> [T]he arbitration provision and Class Action Waiver shall not limit a claimant's right to seek relief that may be awarded under ERISA, so long as such relief is sought through an individual arbitration proceeding, and not through a class or collective action. . . . if any portion of the arbitration provision or Class Action Waiver is found to prohibit a claimant from obtaining any relief under ERISA that the claimant would be able to obtain on an individual basis, the arbitration provision and Class Action Waiver shall not be deemed void; rather, the Arbitrator shall have the authority to award such relief.

Dkt. 16 at 109-10; *cf. Smith*, 13 F.4th at 620–22 (concluding that the arbitration clause was unenforceable because it eliminated plaintiff's ERISA remedy of fiduciary removal.). Dixon fails to make a cognizable argument as to why the arbitration provision is unenforceable.

Dixon next argues that MultiCare waived any right to arbitrate by filing its motion to dismiss and producing documents. Dkt. 17 at 17. MultiCare contends that Dixon has not shown that it acted inconsistently with its right to arbitrate.[6] Dkt. 18 at 7. It explains that it filed its motion to dismiss in response to Dixon's premature filing of this action before exhausting the Plan's internal review and arbitration procedures. According to MultiCare, the motion to dismiss expressly states its intent to arbitrate, preserving that

---

[6] MultiCare also argues that the party opposing arbitration "bears a heavy burden of proof" and must demonstrate prejudice. Dkt. 18 at 7. However, the Supreme Court in *Morgan v. Sundance, Inc*., 596 U.S. 411 (2022), rejected that approach. Although the party asserting waiver still bears the burden of proof, that burden is not "heavy," and prejudice is no longer required to establish waiver. *Morgan*, 596 U.S. at 418. Today, the party asserting waiver must demonstrate (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right. *Armstrong v. Michaels Stores*, 59 F.4th 1011, 1015 (9th Cir. 2023)

ORDER - 11

right. MultiCare further maintains that it produced documents as required by statute. *Id.* at 8.

When considering whether MultiCare took actions inconsistent with its right to arbitration, the Court must consider the "'totality of the parties' actions.'" *Armstrong*, 59 F.4th at 1015 (quoting *Hill v. Xerox Bus. Servs.*, 59 F.4th 457, 471 (9th Cir. 2023)). A party generally "acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Id.* (quoting *Newirth ex rel. Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019)).

Here, MultiCare argued in its very first motion—the motion to dismiss—that arbitration is required. It did not, as Dixon suggests, extensively litigate the merits and then attempt to compel arbitration after losing. Instead, MultiCare has consistently maintained that Dixon's arguments are subject to mandatory arbitration. MultiCare therefore did not waive its right to arbitration.

Because the Plan's arbitration provision is enforceable, and Dixon does not dispute that the arbitration provision governs his ERISA claims, MultiCare's request to compel arbitration is **GRANTED**. Dixon's ERISA claims are **STAYED** pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

ORDER - 12

**D.    Dixon's Washington state law wage withholding claim is preempted by ERISA.**

MultiCare argues that Dixon's RCW 49.52.050 state law wage withholding claim "falls within the expansive sweep of ERISA's preemption clause." Dkt. 15 at 9. It argues that "[t]here is no doubt" that the state law relates to an employee benefit plan because it penalizes employers for collecting "a rebate of any part of wages" with no distinction for wages that are directed to an employee's ERISA retirement plan. *Id.*

Dixon responds that RCW 49.52 is unrelated to the Plan for several reasons: (1) the law regulates wage deductions before they become plan assets; (2) it does not require interpretation of the Plan's terms; (3) it addresses pure payroll functions; and (4) it was violated before funds "entered" the Plan. Dkt. 17 at 13.

ERISA § 514(a) broadly preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). A law "relates to an employee benefit plan if it has either a 'connection with' or 'reference to' such a plan." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir. 2009) (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)).  In other words, a cause of action is related to an ERISA plan if the existence of the plan is essential for establishing liability. *Id.*; *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (A state law cause of action is preempted by ERISA where legal liability exists "only because of [the] administration of ERISA-regulated benefit plans" and "where no legal duty (state or federal) independent of ERISA or the plan terms is violated."). Where a state law claim is preempted by federal law, dismissal may be granted under Rule

ORDER - 13

12(b)(6). *See, e.g.*, *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005) (affirming dismissal of state law causes of action that were preempted by ERISA).

Here, any alleged liability under RCW 49.52.050 arises solely from Dixon's automatic enrollment in MultiCare's 401(k) Plan. RCW 49.52.050 imposes penalties on employers who unlawfully "collect or receive" any portion of an employee's wages. MultiCare "collected" Dixon's wages pursuant to the terms of an ERISA governed 401(k) retirement plan. Because the challenged conduct concerns wage deferral made under an ERISA employee benefit plan, Dixon's claim falls within ERISA's preemption clause. *See* 29 U.S.C. § 1144(a).

Dixon's RCW 49.52.050 wage withholding claim is preempted by ERISA. MultiCare's motion to dismiss this claim is **GRANTED** and it is **DISMISSED** with prejudice and without leave to amend.

**E.      Dixon's retaliation claims are dismissed for failure to state a claim.**

Dixon asserts retaliation claims under both ERISA § 510 and RCW 49.48.090[7] for "[a]ny adverse action taken because Dixon asserted ERISA rights." 2AC, Dkt. 13-1 at 5. MultiCare correctly contends that this claim must fail because a party may not assert a claim over actions "that may, or may not, occur in the future." Dkt. 15 at 10 (citing *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002)). In his reply, Dixon points to MultiCare's "e-email blasts to several employees." However, Dixon did not

---

[7] RCW 49.48.090 does not create or support a retaliation claim.

include those facts in his second amended complaint, and they do not state a plausible retaliation claim in any event.[8]

MultiCare's motion to dismiss Dixon's retaliation claims is **GRANTED**. His retaliation claims are **DISMISSED** without prejudice.

**F.      MultiCare has produced all statutorily required documents.**

As a separate matter, Dixon alleges in his response to MultiCare's motion to dismiss that he is entitled to statutory penalties of $110 per day for MultiCare's failure to produce all requested documents. Dkt. 17 at 5 (citing 29 C.F.R. § 2575.502c-1). He raised this argument again a month later in his motion to compel plan documents, Dkt. 19. Dixon argues that without these documents, he cannot identify specific fiduciaries, understand the plan's structure, access evidence of account error, or evaluate insurance coverage for settlement. Dkt. 19 at 8. He argues that arbitration without these documents is futile. Dkt. 17 at 2 (citing *Vaught v. Scottsdale Healthcare*, 546 F.3d 620 (9th Cir. 2008). However, his reliance on *Vaught* is misplaced.

*Vaught* reiterates that before filing suit under ERISA § 502, a plaintiff "must avail himself or herself of a plan's own internal review procedures." *Id.* at 626. *Vaught* does not hold that failing to disclose documents excuses arbitration; in fact, it does not even mention arbitration at all. More importantly, Dixon fails to identify any documents required under ERISA that MultiCare failed to produce. To the contrary, the evidence he

---

[8] Dixon alleges in his first amended complaint that MultiCare has taken adverse actions against him, including auto rejecting his transfer request and denying him union representation, in retaliation for asserting his ERISA statutory rights. Dkt. 11 at 3–4. However, he did not include those allegations in his operative, second amended complaint.

ORDER - 15

attached in response to MultiCare's motion to dismiss suggests the MultiCare timely provided him with the following documents:

1. The MultiCare Health System 401(k) Plan (as amended and restated effective July 1, 2017) (the 2017 Restatement)
2. Amendments One to Fourteen to the 2017 Restatement
3. March 2020 Summary Plan Description for Plan
4. Summaries of Material Modifications for the Plan dated June 2022, December 2022 and April 2024
5. The Trust Agreement for the Plan effective April 29, 2019
6. Amendment to the Trust Agreement effective October 1, 2024
7. The Annual Report (Form 5500) for the 2023 Plan Year filed on October 14, 2024
8. The Administrative Services Agreement for MultiCare Health System effective April 29, 2019, with provisions relevant to the MultiCare Health System 401(k) Plan.

Dkt. 17-1 at 21.

Dixon alleges that this is not sufficient, asserting that ERISA also requires MultiCare to produce "(1) Committee minutes, (2) Fiduciary roster, (3) Fidelity bond policy, (4) Investment Policy Statement, (5) Summary Annual Reports, (6) 404a-5 participant disclosures, (7) 408(b)(2) service provider disclosures, (8) Audit logs, and (9) Committee charter." Dkt. 17 at 5. But that is not what the statute requires. *See* 29 U.S.C. § 1024(b)(4).

Dixon also argues that MultiCare is required to produce the entire administrative file under 29 C.F.R. § 2560.503-1(h)(2)(iii). However, that regulation is specific to a claim for benefits. A claim for benefits is defined as "a request for a plan benefit." 29 C.F.R. § 2560.503-1(e). Dixon is not requesting a "plan benefit," but rather a "refund" or a "corrective distribution" of the wages deferred to his 401(k) account. 2AC, Dkt. 13-1 at 1, 6.

ORDER - 16

Lastly, Dixon's motion to compel is procedurally deficient. Despite MultiCare's repeated attempts to meet and confer regarding discovery, Dixon moved to compel without first serving MultiCare with any discovery requests under Rule 34; attending, or even scheduling, a Rule 26(f) conference; or making any good faith attempt to confer with MultiCare. *See* Fed. R. Civ. P. 37; W.D. Wash. Local Civ. R. 37(a)(1). The requirement to meet and confer is intended to "ensure that parties have an inexpensive and expeditious opportunity to resolve discovery disputes and that only genuine disagreements are brought before the Court." *Nguyen v. Mercer Island Boys Basketball Booster Club*, No. 2:24-CV-01990-RSL, 2025 WL 1519134, at *2 (W.D. Wash. May 28, 2025) (denying motion to compel due to insufficient conferral where plaintiff merely certified that they "repeatedly notified defendant" of discovery deficiency).

Dixon asserts that he served a written discovery request by email, sent a deficiency "cure" email identifying the documents still missing, and sent a "final" meet and confer email "giving a short cure window." Dkt. 19-1 at 1. However, emails alone are not sufficient. A good faith effort "requires a face-to-face meeting or a telephone conference." W.D. Wash. Local Civ. R. 37(a)(1); *see Gould v. Allstate Vehicle & Prop. Ins. Co.*, No. 2:22-CV-00820-LK, 2023 WL 3018865, at *6 (W.D. Wash. Apr. 20, 2023) (denying motion to compel where defendant had not shown that it met and conferred regarding the discovery dispute). Dixon failed to meet and confer as required.

Dixon's request for ERISA penalties relating to withheld documents, Dkt. 17 at 5, and his related motion to compel, Dkt. 19, are **DENIED**.

**G.      Dixon is subject to sanctions for his improper filings.**

MultiCare requests that the Court subject Dixon to sanctions for his repeated improper filings, including citing nonexistent or inapplicable case law, misconstruing applicable law, and generally misleading the Court. Dkt. 29 at 10. Rather than an award of fees, however, MultiCare requests that the Court admonish Dixon for his inappropriate conduct and willful violation of the federal rules. *Id.* at 11. Dixon did not directly respond to this sanctions request.

A pro se litigant is not held to the same standard as a licensed attorney. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). Regardless of technical deficiencies, a pro se litigant's pleading—his complaint—should be judged only by function, not form. *Id*. This rule is almost uniformly applied when a pro se plaintiff is seeking *in forma pauperis* status, or defending a motion to dismiss. But a pro se plaintiff is not immune from the rules of civil procedure. Although the Court must construe his complaint liberally, a pro se litigant "must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, 925–28 (9th Cir. 2012). Pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record. *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

Dixon repeatedly cites to nonexistent cases[9] and to other cases[10] that do not support the proposition for which they were offered. The Court has no formal rule against the use of generative artificial intelligence to write pleadings and briefs. However, parties are bound by Rule 11, which requires parties to certify that their "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

Dixon's repeated and presumably intentional failure to verify cited authority supports an award of sanctions. If, in the future, Dixon repeats this behavior, monetary sanctions may be awarded.

## III.  ORDER

MultiCare's motion to dismiss, Dkt. 15, is **DENIED** in part and **GRANTED** in part. MultiCare's motion to dismiss Dixon's ERISA claims is **DENIED**. However, MultiCare's request to compel arbitration on those claims is **GRANTED**. Dixon's ERISA claims are **STAYED** pending arbitration. The parties shall file **a Joint Status Report within 30 days of the completion of any arbitration**.

Dixon's RCW 49.52.050 wage withholding claim is **DISMISSED** with prejudice. Dixon's retaliation claim is **DISMISSED** without prejudice.

Dixon's motion to compel production of plan documents, Dkt. 19, is **DENIED**.

---

[9] The following cases are non-existent: *Mazza v. Washoe Cnty.*, 728 F.2d 1260, 1263 (9th Cir. 1984) and *Shirley v. Precision Castparts Corp.*, 992 F.3d 1082, 1095 (9th Cir. 2021). Dkt. 17 at 5, 15.

[10] The following are a few of the cases that do not support the proposition for which they are offered: *Bounds v. Smith*, 430 U.S. 817, 823 (1977) and *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000).

ORDER - 19

Dixon's motion for an extension of time, Dkt. 26; and MultiCare's motion for a status or scheduling conference, Dkt. 33, are **DENIED** as moot.

Dated this 4th day of March, 2026.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 20